PEOPLE v JACKSON

Docket No. 285532. Submitted February 3, 2011, at Detroit. Decided May 17, 2011, at 9:10 a.m. Leave to appeal denied, 490 Mich 882.

Andre L. Jackson was convicted by a jury in the Wayne Circuit Court, Leonard Townsend, J., of first-degree premeditated murder, conspiracy to commit murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony. Defendant appealed.

The Court of Appeals *held*:

1. The evidence was sufficient to support defendant's convictions.

2. The prosecution's failure to disclose to defendant a transcript of one of the victim's prior statements given pursuant to an investigative subpoena violated MCR 6.201. However, there was no due-process violation because, when the trial court discovered the omission of the transcript from the discovery materials, the trial court precluded the prosecution from using the transcript in its case-in-chief. Defense counsel was then given an opportunity to review the transcript, and defendant did not argue or suggest in the trial court or on appeal that the transcript contained any exculpatory material. The trial court did not abuse its discretion by fashioning the remedy it employed for the discovery violation.

3. The trial court did not plainly err when, after it had dismissed a juror who disclosed that she was too stressed and overwhelmed to continue with the trial, it proceeded with the trial without questioning the remaining jurors to determine whether the dismissed juror may have said or done anything to taint them. The trial court's questioning of the juror before dismissing her had failed to reveal any information or circumstances suggesting that the remaining jurors were exposed to improper influences or that their ability to render a fair and impartial verdict was compromised.

4. Defendant failed to establish that inadmissible hearsay was admitted or plain constitutional error occurred when a police officer testified regarding the substance of one of the victim's responses to questions the officer asked in an interview conducted in a hospital while the victim was unable to speak. In order to answer

the officer's questions, the victim responded by either squeezing the hand of a nurse to indicate a "yes" response or by not squeezing the nurse's hand to indicate a "no" response, and the nurse relayed to the officer whether the victim had indicated yes or no. The nurse's reports to the officer of the victim's responses fell within the language-conduit rule, which provides that the statements of an interpreter are not hearsay because they are considered to be the statements of the declarant and the interpreter is considered an agent of the declarant and not an additional declarant. In determining whether statements made through an interpreter are admissible under the language-conduit rule, a court should consider (1) whether actions taken after the conversation were consistent with the statements translated, (2) the interpreter's qualifications and language skill, (3) whether the interpreter had any motive to mislead or distort, and (4) which party supplied the interpreter. None of those considerations militated against application of the rule in this case. Defendant did not have a constitutional right to confront the nurse because what she reported was properly considered to be the victim's statements and defendant had an opportunity to cross-examine the victim at trial.

5. The record did not support defendant's claims that the trial court was biased against him and that his counsel provided ineffective assistance.

Affirmed.

1. Constitutional Law — Due Process — Criminal Law — Discovery of Evidence.

There is no general constitutional right to discovery in a criminal case; however, due process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the evidence.

2. Criminal Law — Evidence — Discovery of Evidence.

A party in a criminal action must, upon request, disclose any written or recorded statement pertaining to the case by a lay witness whom the party may call at trial (MCR 6.201[A][2]).

3. Criminal Law — Right to Fair Trial — Jury.

A criminal defendant has a constitutional right to a fair trial by an impartial jury; a trial court must take appropriate steps to ensure that jurors will not be exposed to information or influences that could affect their ability to render an impartial verdict, but due process does not require a new trial every time a juror has been placed in a potentially compromising situation (US Const, Am VI; Const 1963, art 1, § 20).

4. CONSTITUTIONAL LAW — CONFRONTATION CLAUSE — LANGUAGE-CONDUIT RULE — HEARSAY — INTERPRETERS.

>An interpreter is considered an agent of the declarant, not an additional declarant, under the language-conduit rule, and the interpreter's statements are regarded as the statements of the declarant, without creating an additional layer of hearsay; a court, in considering whether statements made through an interpreter are admissible under the rule, should consider (1) whether actions taken after the conversation were consistent with the statements translated, (2) the interpreter's qualifications and language skill, (3) whether the interpreter had any motive to mislead or distort, and (4) which party supplied the interpreter.

5. TRIAL — JUDICIAL BIAS — VEIL OF JUDICIAL IMPARTIALITY.

>A trial judge has wide discretion and power in matters of trial conduct; judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging judicial bias unless there is a deep-seated favoritism or antagonism to the extent that the exercise of fair judgment is impossible; comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the heavy presumption of judicial impartiality; the appropriate test to determine whether a trial court's comments or conduct pierced the veil of judicial impartiality is whether the conduct or comments were of such a nature as to unduly influence the jury and deprive the appellant of the right to a fair and impartial trial.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Thomas M. Chambers*, Assistant Prosecuting Attorney, for the people.

*Malita Barrett* for defendant.

Before: WHITBECK, P.J., and O'CONNELL and WILDER, JJ.

WILDER, J. Defendant was convicted by a jury of first-degree premeditated murder, MCL 750.316(1)(a), conspiracy to commit murder, MCL 750.157a, assault with intent to commit murder, MCL 750.83, and pos-

session of a firearm during the commission of a felony, MCL 750.227b. He was sentenced to life in prison for the first-degree murder and conspiracy convictions and 225 months to 40 years' imprisonment for the assault conviction, with those sentences to be served concurrently but consecutively to a two-year term of imprisonment for the felony-firearm conviction. He appeals as of right. We affirm.[1]

## I. FACTUAL BACKGROUND

Defendant's convictions arose from the fatal shooting of Bennie Peterson and the nonfatal shooting of Donteau Dennis on the east side of Detroit during the early morning hours of September 28, 2007. According to the prosecution's evidence, codefendant Quonshay Douglas-Ricardo Mason persuaded Peterson and Dennis to leave Peterson's house under the pretext that they were going to rob a drug addict who was carrying a large amount of cash to purchase drugs. Mason drove Peterson and Dennis, in Peterson's minivan, to a house on Malcolm Street and told Dennis to purchase drugs in the house to use as bait in the robbery. Defendant and codefendant Kainte Hickey had followed Mason in defendant's Jeep. After Dennis left Peterson's minivan to purchase the drugs, Mason and defendant parked their vehicles so that the minivan was blocked in and could not be driven away. Mason then got out of the minivan and defendant got out of his Jeep, and the two of them went to the side of the

---

[1] Defendant was tried jointly with codefendants Kainte Deshawn Hickey and Quonshay Douglas-Ricardo Mason, who were similarly convicted of first-degree premeditated murder, conspiracy to commit murder, assault with intent to commit murder, and felony-firearm. Codefendant Hickey was also convicted of being a felon in possession of a firearm, MCL 750.224f. We affirmed in codefendants' consolidated appeals in an unpublished opinion per curiam, issued March 8, 2011 (Docket Nos. 285253 and 285254).

minivan and began firing guns at Peterson, who was still inside. At the same time, Hickey emerged from defendant's Jeep and fired several shots at Dennis as he crossed the street. Peterson was killed.

Officer Frank Senter arrived and found Dennis lying wounded in a backyard. Dennis remarked that he did not believe that he would survive and told Officer Senter that Hickey had shot him over a drug debt. Although Officer Senter did not recall hearing Dennis say anything about Peterson, defendant, or Mason, he stated that Dennis made additional statements that Officer Senter could not understand because of Dennis's condition. Later, while Dennis was hospitalized, he gave a statement implicating defendant and Mason in the shooting attack on Peterson. At trial, Dennis again identified defendant and Mason as the persons who shot at Peterson inside the minivan.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to support his convictions. When a defendant challenges the sufficiency of the evidence in a criminal case, this Court considers whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror in finding that the essential elements of the crime were proved beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000); *People v Sexton*, 250 Mich App 211, 222; 646 NW2d 875 (2002). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Nowack*, 462 Mich at 400 (quotation marks and citations omitted). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the

prosecutor's favor." *People v Harrison*, 283 Mich App 374, 378; 768 NW2d 98 (2009).

A conviction of first-degree premeditated murder requires evidence that "the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Kelly*, 231 Mich App 627, 642; 588 NW2d 480 (1998). Premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995).

A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense. *People v Justice (After Remand)*, 454 Mich 334, 345; 562 NW2d 652 (1997). The individuals must specifically intend to combine to pursue the criminal objective, and the offense is complete upon the formation of the agreement. *Id.* at 345-346. The intent, including knowledge of the intent, must be shared by the individuals. *Id.* at 346. Thus, there must be proof showing that "the parties specifically intended to further, promote, advance, or pursue an unlawful objective." *Id.* at 347. Direct proof of a conspiracy is not required; rather, "proof may be derived from the circumstances, acts, and conduct of the parties." *Id.*

The elements of assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996) (quotation marks and citation omitted). The intent to kill may be proved by inference from any facts in evidence. *People v Lawton*, 196 Mich App 341, 350; 492 NW2d 810 (1992). A person is guilty of felony-firearm if the person possesses a firearm during the commission of a felony. MCL 750.227b.

A person who aids or abets the commission of a crime may be convicted as if he or she directly committed the crime. *People v Izarraras-Placante*, 246 Mich App 490, 495; 633 NW2d 18 (2001).

> "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." [*Id.* at 495-496, quoting *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995).]

Aiding and abetting describes all forms of assistance rendered to the perpetrator, including any words or deeds that may support, encourage, or incite the commission of a crime. *People v Youngblood*, 165 Mich App 381, 386; 418 NW2d 472 (1988).

In this case, Dennis testified that before they departed Peterson's house, defendant was waiting in a Jeep on the street, positioning himself in a manner that prevented Dennis from seeing whether someone else was inside, and defendant then followed the minivan to Malcolm Street where Mason took Dennis and Peterson. At Malcolm Street, defendant and Mason aligned their respective vehicles so that the minivan was blocked in and could not be driven away. Hickey, whose presence in the Jeep had been concealed by defendant, got out of the Jeep and pursued Dennis with a gun while defendant and Mason both began shooting toward the minivan at Peterson. Viewed in a light most favorable to the prosecution, this evidence supports an inference that defendant, Mason, and Hickey were acting in concert according to a premeditated plan to kill Peterson and Dennis. Their plan involved enticing Peterson

and Dennis to leave Peterson's home under the pretext that they were going to commit a robbery. When they reached the intended location, they acted together to separate Dennis and Peterson so that Mason and defendant could shoot Peterson and Hickey could make a surprise attack on Dennis. This evidence supports defendant's convictions for the first-degree murder of Peterson, conspiracy to commit murder, and aiding and abetting Hickey's assault with intent to murder Dennis. In addition, the evidence that defendant was armed with a gun during these offenses supports his felony-firearm conviction.

Although defendant argues that Dennis was not a credible witness and gave inconsistent statements concerning defendant's involvement, the credibility of his testimony was for the jury to resolve. It was within the jury's province to determine that Dennis's testimony was truthful, notwithstanding some discrepancies in his prior statements. *Harrison*, 283 Mich App at 378.

### III. DISCOVERY VIOLATION

Defendant next argues that the prosecutor's failure to disclose a transcript of Dennis's prior statements given pursuant to an investigative subpoena violated his constitutional right to discovery. We disagree.

This Court reviews de novo a defendant's claim of a constitutional due-process violation. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). "There is no general constitutional right to discovery in a criminal case . . . ." *Weatherford v Bursey*, 429 US 545, 559; 97 S Ct 837; 51 L Ed 2d 30 (1977); see also *People v Banks*, 249 Mich App 247, 254; 642 NW2d 351 (2002). However, due process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests

the evidence. *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *Schumacher*, 276 Mich App at 176. In addition, MCR 6.201(A)(2) requires that a party in a criminal action, upon request, disclose "any written or recorded statement, including electronically recorded statements, pertaining to the case by a lay witness whom the party may call at trial . . . ." The prosecution concedes that the omission from the discovery materials of the transcript of Dennis's statements given pursuant to the investigative subpoena violated MCR 6.201 but denies that the transcript contained exculpatory evidence that would render the omission a due-process violation.

When the omission of the transcript was discovered at trial, the trial court precluded the prosecution from using the transcript in its case-in-chief. At trial, defense counsel was given an opportunity to review the 30-page transcript. But defense counsel never argued in the trial court that the transcript contained any exculpatory material and, on appeal, does not identify any exculpatory material as well. Accordingly, there was no due-process violation.

The remaining question is whether the trial court abused its discretion by fashioning its remedy for the discovery violation. MCR 6.201(J); *Banks*, 249 Mich App at 252. When determining an appropriate remedy for a discovery violation, "the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances . . . ." *Banks*, 249 Mich App at 252. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Here, the trial court originally precluded the prosecutor from questioning Dennis regarding his statements given pur-

suant to the investigative subpoena. When defense counsel argued that disclosure of the transcript was essential to his cross-examination of Dennis, the trial court gave counsel the opportunity to review it. Defense counsel thereafter continued his cross-examination of Dennis. Under the circumstances, the trial court's remedy was not an abuse of discretion.

### IV. JUROR MISCONDUCT

Next, defendant argues that a new trial is required because, following the dismissal of a juror, the trial court failed to question the remaining jurors to determine whether the dismissed juror may have said or done anything to taint the remaining jurors. Because defendant did not object to the trial court's handling of the dismissed juror's request to be excused and because defendant did not request that the court question the remaining jurors, this issue was not preserved. We review unpreserved claims for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750,763-764; 597 NW2d 130 (1999); see also *People v Miller*, 482 Mich 540, 558-559; 759 NW2d 850 (2008) (stating that an unpreserved claim of an irregularity regarding the jury does not entitle a defendant to a new trial unless the defendant was denied the right to an impartial jury).

The United States and Michigan Constitutions guarantee a criminal defendant a fair trial by an impartial jury. US Const, Am VI; Const 1963, art 1, § 20. The trial court must take appropriate steps to ensure that jurors will not be exposed to information or influences that could affect their ability to render an impartial verdict based on the evidence admitted in court. MCR 6.414(B). However, " 'due process does not require a new trial every time a juror has been placed in a potentially

compromising situation.' " *People v Grove*, 455 Mich 439, 472; 566 NW2d 547 (1997), quoting *Smith v Phillips*, 455 US 209, 217; 102 S Ct 940; 71 L Ed 2d 78 (1982); see also *Miller*, 482 Mich at 558-559.

In this case, a juror informed the trial court at the start of the second day of trial that she was too stressed and overwhelmed to continue. The trial court questioned her about what she may have said to the other jurors about her situation, and she indicated only that she had told them that she felt frustrated and had been unable to sleep. Without objection by any party, the trial court dismissed the juror without further questioning and continued the trial without questioning the remaining jurors. We disagree with defendant's argument on appeal that the trial court was obligated to question the remaining jurors to determine whether the dismissed juror may have said or done anything to taint them. The trial court's questioning of the dismissed juror did not reveal any information or circumstances to suggest that the remaining jurors had been exposed to improper influences or that their ability to render a fair and impartial verdict had been compromised. Under the circumstances, the trial court's decision to proceed with the trial without questioning the remaining jurors was not plain error.

## V. ADMISSIBILITY OF NURSE OTSUJI'S "STATEMENTS"

At trial, Sergeant William Anderson testified regarding an interview of Dennis that was conducted in the hospital with the assistance of a nurse, Molly Otsuji. Dennis was unable to speak at the time of the interview, so Sergeant Anderson communicated with him by asking yes-or-no questions, to which Dennis responded by either squeezing the hand of Nurse Otsuji to indicate a "yes" response or by not squeezing her hand to indicate

a "no" response. At trial, Sergeant Anderson testified regarding the substance of Dennis's responses, as reported by Nurse Otsuji. Defendant now argues on appeal that Nurse Otsuji's reports of Dennis's responses to Sergeant Anderson's questions were inadmissible hearsay and that the admission of her reports also violated his constitutional right of confrontation because she was not called as a witness at trial.[2]

Although defendant objected to Sergeant Anderson's testimony regarding Nurse Otsuji's reports of Dennis's responses on the ground that the statements were "double hearsay," he did not raise an objection based on the Confrontation Clause or object to the prosecution's failure to produce Nurse Otsuji at trial. Therefore, this issue is preserved only with respect to the hearsay question and not with respect to the constitutional issue. MRE 103(a)(1); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). This Court reviews preserved evidentiary issues for an abuse of discretion. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

The Confrontation Clause, US Const, Am VI, states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." See also Const 1963, art 1, § 20. In *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court held that the Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. A pretrial statement is testi-

---

[2] Defendant does not challenge the admissibility of Dennis's hand-signal "statements" to Nurse Otsuji.

monial if the declarant should have reasonably expected the statement to be used in a prosecutorial manner and the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.* at 51-52; *People v Lonsby*, 268 Mich App 375, 377; 707 NW2d 610 (2005).

Defendant argues that Nurse Otsuji's reports to Sergeant Anderson were inadmissible hearsay, which is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c); *People v McLaughlin*, 258 Mich App 635, 651; 672 NW2d 860 (2003). Defendant further argues that Nurse Otsuji's reports were testimonial in nature and that he never had an opportunity to cross-examine her and, thus, the admission of those statements violated his constitutional right of confrontation. The prosecution responds that Nurse Otsuji's reports were admissible under the "language conduit" rule, under which an interpreter is considered an agent of the declarant, not an additional declarant, and the interpreter's statements are regarded as the statements of the declarant without creating an additional layer of hearsay. See *Hernandez v State*, 291 Ga App 562, 566; 662 SE2d 325 (2008), *United States v Cordero*, 18 F3d 1248, 1252-1253 (CA 5, 1994), and *State v Patino*, 177 Wis 2d 348, 370-371; 502 NW2d 601 (Wis App, 1993).[3]

The language-conduit rule has been applied in the context of a Confrontation Clause challenge to testi-

---

[3] We are not bound by the decisions of federal courts or courts of other states, but we may consider them to be persuasive authority. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004); *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 559 n 38; 705 NW2d 365 (2005).

mony of a translator's statements. In *Hernandez*, 291 Ga App at 567-568, the Georgia Court of Appeals held that a defendant does not have a constitutional right to confront a translator because the statements of the translator are considered to be the statements of the declarant. The court held that because the translator's statements were considered to be the statements of the declarant, who in that case was the defendant, the statements did not implicate the Confrontation Clause because a defendant has no right to confront himself. *Id.* In determining whether statements made through an interpreter are admissible under the language-conduit rule, a court should consider (1) whether actions taken after the conversation were consistent with the statements translated, (2) the interpreter's qualifications and language skill, (3) whether the interpreter had any motive to mislead or distort, and (4) which party supplied the interpreter. *United States v Nazemian*, 948 F2d 522, 527-528 (CA 9, 1991); see also *People v Gutierrez*, 916 P2d 598, 600-601 (Colo App, 1995).

In this case, Nurse Otsuji's reports to Sergeant Anderson regarding Dennis's hand-signal responses fall within the language-conduit rule. Although Nurse Otsuji was not interpreting a foreign language, she was conveying Dennis's statements by reporting whether he used the signal to indicate "yes" or used the signal to indicate "no." In this sense, Nurse Otsuji functioned as an interpreter by relaying Dennis's responses to Sergeant Anderson. Further, there is no indication that any of the considerations set forth in *Nazemian*, 948 F2d at 527-528, militate against application of the language-conduit rule in this case. Defendant does not assert that Nurse Otsuji was not qualified to assist in the manner that she did, nor does he impute to her any motive to mislead or distort. Although Sergeant Anderson requested Nurse Otsuji's assistance, there is no indication that he purposely selected her for

any reason other than that she was immediately available. Thus, Nurse Otsuji's reports did not constitute an additional layer of hearsay because what she was reporting were the statements actually made by Dennis. Additionally, although the statements that Dennis made with Nurse Otsuji's assistance in response to Sergeant Anderson's questions qualify as testimonial statements, defendant did not have a constitutional right to confront Nurse Otsuji because what she reported were properly considered to be Dennis's statements. Defendant had a full opportunity to cross-examine Dennis, thus satisfying his Confrontation Clause rights.

For these reasons, defendant has failed to establish that Nurse Otsuji's reports were inadmissible hearsay, and he has also failed to establish a plain constitutional error. See *Cordero*, 18 F3d at 1252-1253 (holding that a defendant who did not object to an interpreter's statements failed to establish a plain error affecting the defendant's substantial rights).

## VI. JUDICIAL BIAS

Defendant argues that a pattern of rulings and remarks by the trial court[4] establish that the court was biased against him. Because defendant did not raise any claim of judicial bias in the trial court, this issue is not preserved. Therefore, we review this issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

A criminal defendant is entitled to a "neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996) (question marks and

---

[4] Wayne Circuit Judge Leonard Townsend conducted the trial in this matter, although a different judge of the circuit, Judge David Allen, sentenced defendant.

citation omitted). A defendant claiming judicial bias must overcome "a heavy presumption of judicial impartiality." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). In general, this Court applies the following analysis to determine whether a trial court's comments or conduct deprived the defendant of a fair trial:

> "Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct. This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments 'were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial.' " [*People v Conley*, 270 Mich App 301, 307-308; 715 NW2d 377 (2006), quoting *People v Collier*, 168 Mich App 687, 689; 425 NW2d 118 (1988) (citations omitted).]

Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Wells*, 238 Mich App at 391. Comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality. *Id.*

In this case, defendant's reliance on various evidentiary rulings does not establish support for his claim of judicial bias. The trial court allowed the prosecutor to present the prior statement of Peterson's girlfriend, Yolanda Bishop, but not any portion that implicated defendant. The court thereafter denied defendant's motion for a mistrial with respect to this matter because no portion of the statement implicating defendant was received. Further, the trial court allowed the prosecutor to use Dennis's prior state-

ment for rehabilitative purposes after the defense attorneys attacked Dennis's credibility. However, the use of Dennis's prior statement in this manner was consistent with MRE 801(d)(1) (prior consistent statement of declarant admissible to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive). Although defendant asserts that the trial court improperly allowed the prosecutor to ask a question of Lekeitha Boutire—who went with Mason to Peterson's house on September 28, 2007—regarding defendant's motive to harm Peterson, without a possible foundation, the record discloses that the trial court specifically instructed the prosecutor to establish her testimony. In accordance with this instruction, the prosecutor elicited that defendant had threatened both Boutire and Peterson at a gas station. In sum, the record discloses that the trial court provided principled reasons, grounded in the evidence and the law, for its evidentiary rulings. Its rulings do not reflect a deep-seated favoritism or antagonism to the extent that the exercise of fair judgment was not possible.

Defendant also argues that it was improper for the trial court to comment that there was no evidence of a robbery or intended robbery on the date of the offense. We agree with defendant that the trial court's statement was factually inaccurate given that Dennis admitted that he and Peterson left with Mason to "hit a lick," which he understood to mean to commit a robbery. However, the court's inaccurate statement did not deprive defendant of a fair trial. The statement was made in response to defense counsel's opening statement characterizing Dennis as a thug, thief, robber, and "stick up man." There was no evidence that Dennis had any history of involvement in theft crimes, and the trial court explained to the jury that the attorneys' statements were not evidence. Considering the limited con-

text in which the court's statements were made, they were not sufficient to pierce the veil of judicial impartiality and deprive defendant of a fair trial.

We also reject defendant's argument that the trial court's decision to schedule the case for trial on March 19, 2008, only 34 days after defendant's preliminary examination, demonstrates that the court was biased against defendant. The trial date was selected to enable defendant and his two codefendants to be tried jointly. Although defendant asserts that his trial counsel did not have time to prepare for trial, there was no objection to the trial date or any request for an adjournment, and the record discloses that defense counsel was well prepared at trial. Defense counsel's cross-examination of prosecution witnesses displayed a thorough knowledge of the differences between their trial testimony and any prior testimony and statements they had given, as well as the details of the police investigation. Defendant does not explain what else counsel could have done if he had more time to prepare.

In sum, the record does not support defendant's claim that the court was biased against him.

### VII. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant last argues that he is entitled to a new trial because he was deprived of the effective assistance of counsel. A claim of ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Because defendant did not raise a claim of ineffective assistance of counsel in the trial court, pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), our review of this issue is limited to mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). To establish ineffective

assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted. *People v Pickens*, 446 Mich 298, 309; 521 NW2d 797 (1994); *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

Defendant argues that defense counsel was ineffective because he failed to provide defendant a copy of the discovery materials. First, the record does not indicate what efforts defense counsel may have made to share the discovery materials with defendant, whether by providing him a personal copy of the materials or by conveying the substance of the information to defendant during discussions about the case. Thus, defendant has not established an objectively unreasonable error. Second, although defendant asserts that he could have better assisted counsel in preparing for the case or in deciding what strategy to pursue had counsel shared the discovery materials before trial, he does not explain what he actually would have done differently, either before or at trial, if he had received any discovery materials sooner. Thus, defendant has also failed to establish that he was prejudice by counsel's alleged deficiency.

Defendant also argues that defense counsel was ineffective because he failed to request the addict-informant jury instruction, CJI2d 5.7, with respect to Dennis's testimony, because the first statement Dennis gave that implicated defendant was the statement he made while he was medicated in the hospital. CJI2d 5.7 is a cautionary instruction that advises a jury that testimony given by an addict-informant should be examined closely and considered with special scrutiny. A use note to the instruction provides that it is "to be used where the uncorroborated

testimony of an addict informant is the only evidence linking the accused with the alleged offense."

In this case, the mere fact that Dennis was medicated when he gave a statement in the hospital did not make him an addict-informant. We also disagree with defendant's contention that counsel should have requested a modified version of CJI2d 5.7, reformulated as a "medicated witness" instruction. The special circumstances that would have warranted a cautionary instruction for an addict-informant did not come into play merely because Dennis was receiving physician-ordered medication for his injuries when he gave his statement. Further, the trial court instructed the jury on the various factors it should consider in evaluating a witness's testimony generally, such as whether the witness had any motivation for testifying the way he or she did, whether the witness had an interest in the outcome of the case, whether the witness had something to gain, whether there was any relationship between the witness and any of the parties, whether the witness's testimony was corroborated by other direct or circumstantial evidence, whether the witness made any statements outside of court that were different from the statements made in court, and the witness's demeanor while testifying. Because the addict-informant instruction was not applicable, and the instructions given by the court were sufficient to enable the jury to properly consider Dennis's testimony, defense counsel was not ineffective when he failed to request a modified version of CJI2d 5.7.

Affirmed.

WHITBECK, P.J., and O'CONNELL, J., concurred with WILDER, J.