# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARRY BERNARD GAULDING,

        Defendant-Appellant.

UNPUBLISHED
July 25, 2017

No. 331537
Wayne Circuit Court
LC No. 15-006371-01-FC

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Larry Gaulding, appeals as of right his jury trial convictions of manslaughter, MCL 750.321, and tampering with evidence, MCL 750.483a(6)(b).[1] The trial court sentenced Gaulding as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 30 to 60 years for the manslaughter conviction and 3 to 10 years for the tampering with evidence conviction. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

Gaulding was convicted of causing the death of Ashton O'Hara on July 14, 2015, in Detroit, and thereafter tampering with evidence of the crime. The prosecution presented evidence that Gaulding picked up O'Hara, a male escort, and subsequently stabbed O'Hara and ran over his body with a car. After twice striking O'Hara with his car, Gaulding left O'Hara, who was seriously injured but still alive, on the street, and then went to have his damaged windshield repaired. Soon thereafter, information from witnesses led the police to Gaulding, who fled on foot when he was approached by the police. O'Hara's DNA was found on Gaulding's clothing and in his car. The defense theory was that O'Hara and O'Hara's associate robbed and pulled a knife on Gaulding, who then acted in self-defense to fend them off, and that the robbers drove away in Gaulding's car after Gaulding managed to escape on foot. Gaulding denied striking O'Hara with his car, and he claimed that the car was damaged sometime after it was taken by O'Hara and O'Hara's confederate. Gaulding admitted that he might have cut

---

[1] The jury acquitted Gaulding of first-degree premeditated murder, MCL 750.316(1)(a).

-1-

O'Hara in self-defense during their altercation, but denied knowing how O'Hara ended up in the street. O'Hara died from his injuries.

## II. *BRADY* VIOLATION

### A. STANDARD OF REVIEW

Gaulding first argues that the trial court abused its discretion by denying his motion for a mistrial after the prosecutor's late disclosure of photographs that purportedly depicted a bite mark on Gaulding's chest. He asserts that the late disclosure violated the rule in *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). A trial court's ruling on a motion for a mistrial is reviewed for an abuse of discretion, *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010), as is the trial court's determination of how to handle a discovery violation, *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). "This Court reviews due process claims, such as allegations of a *Brady* violation, de novo." *People v Stokes*, 312 Mich App 181, 189; 877 NW2d 752 (2015).

### B. ANALYSIS

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 US at 87. To establish a *Brady* violation, a defendant must prove: (1) that the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence is material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150. "To establish materiality, a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.' " *Id*., quoting *United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985).

Here, the prosecutor's disclosure of the photographs was untimely, even when considering that the prosecutor only received the photographs on the second day of trial and immediately disclosed them to the defense. See *Kyles v Whitely*, 514 US 419, 437; 115 S Ct 1555; 131 L Ed 2d 490 (1995) (stating that the government is held responsible for the evidence in its control even if the prosecutor is unaware of the evidence). Gaulding asserts that if he had received the photographs in a timely fashion, he would have sought an expert to determine the source of the bite marks depicted in the photographs. Gaulding contends that if someone other than O'Hara was determined to be the source, it would corroborate his testimony that he was in the vehicle with two other people. We agree that, assuming that the photographs would have led to evidence that someone other than O'Hara bit Gaulding, the evidence would have been favorable to the defense in the sense that it would corroborate Gaulding's testimony, thereby lending him credibility. Nevertheless, we note that Gaulding has provided no affidavits or other evidence of the potentially favorable "bite mark expert" testimony that he could have elicited if the photographs were timely disclosed. With no offer of proof, we can only speculate on the

purported value of the photographs had they been timely disclosed. Regardless, the photographs were certainly favorable to the defense—even in the absence of expert testimony regarding the source of the bite marks—because they corroborated Gaulding's testimony that he had a physical confrontation with O'Hara.

Gaulding cannot, however, establish that the photographs were material, i.e., that there was a reasonable probability that if the evidence had been timely disclosed to the defense the result of the proceedings would have been different. *Chenault*, 495 Mich at 150. At best, if the information was disclosed before trial, it would have yielded evidence corroborating Gualding's testimony that O'Hara and another individual were in the vehicle and that there was a physical confrontation. However, there was other evidence corroborating that a third individual was possibly in the vehicle, including DNA evidence. Moreover, the jury credited Gaulding's testimony to an extent given that it acquitted him of first-degree premeditated murder and instead found him guilty only of voluntary manslaughter, which requires a finding of adequate provocation. See *People v Mendoza*, 468 Mich 527, 540-541; 664 NW2d 685 (2003) (reciting elements of voluntary manslaughter). In addition, although the photographs were disclosed late, the defense received them before the trial concluded and was able to use them effectively to corroborate Gaulding's testimony with regard to the physical altercation between himself and O'Hara. On this record, we find that the late disclosure of the photographs did not undermine confidence in the outcome. In sum, there was no *Brady* violation in this case.

Furthermore, to the extent that Gaulding argues that the trial court abused its discretion in denying his request for a mistrial, we disagree. A mistrial should be granted "only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Schaw*, 288 Mich App at 236 (citation and quotation marks omitted). The exercise of the trial court's discretion to fashion an appropriate remedy for a discovery violation involves balancing "the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). To be entitled to relief for a discovery violation, the defendant must show actual prejudice. *People v Rose*, 289 Mich App 499, 525-526; 808 NW2d 301 (2010).

The only remedy the defense sought in this case was a mistrial. The defense argued that if the photographs been timely disclosed, the defense might have obtained an expert opinion that the bite mark was made by a third person, which would have supported Gaulding's testimony that there were three people in his car when he had his confrontation with O'Hara. In denying Gaulding's motion for the "extreme remedy" of a mistrial, the trial court appropriately weighed the various interests at issue, including the fact that the photographs were produced "still relatively early on in the trial" and that the defense was still able to use them to support its argument that a physical confrontation occurred inside Gaulding's car. The trial court also considered that the grounds for Gaulding's request for a mistrial were principally rooted in speculation. The court observed that the photographs depicted a "diffused injury" that "may or may not be" a bite mark, and that, even if the injury were a bite mark, the potential use of an expert to obtain a favorable and *admissible* opinion was speculative at best. Further, when fashioning a remedy for a discovery violation, the trial court is to consider the reasons for noncompliance. *Banks*, 249 Mich App at 252. Here, the prosecutor explained to the trial court—and the detective in charge of the case subsequently testified before the jury—that there was a delay in producing the photographs because they had been filed with the wrong CRISNET

report. Additionally, Gaulding has not demonstrated actual prejudice. *Rose*, 289 Mich App at 525-526. Gaulding has provided no affidavits or other evidence that he would have been able to obtain favorable testimony from a bite mark expert or that he could have even located such an expert. In the absence of an offer of proof, we are left with nothing more than mere speculation about the importance of the bite mark. Finally, the record does not support Gaulding's claim that without the "crucial" testimony of a bite mark expert, the jury had "no corroborating evidence" to evaluate Gaulding's testimony that a third person was in the car. Instead, a forensic scientist testified that DNA from three or more individuals was found on Gaulding's blue jeans. That DNA included O'Hara, but the other contributors could not be identified. Also, DNA from under O'Hara's fingernails and on his hands indicated a mixture from O'Hara and another person, who could not be identified. Gaulding's lawyer used this evidence in closing argument to argue that because Gaulding had been excluded as a contributor on those items, the evidence supported Gaulding's testimony that a third person was in the car. For these reasons, the trial court did not abuse its discretion in ruling that the late production of the photographs was not grounds for a mistrial.

## III. DEPARTURE SENTENCE

## A. STANDARD OF REVIEW

Gaulding also argues that he is entitled to be resentenced under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), because the trial court's departure sentence is unreasonable. The trial court exceeded the minimum sentencing guidelines range by 11 years when it sentenced Gaulding to 30 to 60 years' imprisonment for the manslaughter conviction. In *Lockridge*, our Supreme Court held that a court may exercise its discretion to depart from the applicable guidelines range, and "[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392. "Resentencing will be required when a sentence is determined to be unreasonable." *Id*.

## B. ANALYSIS

In *People v Steanhouse*, 313 Mich App 1, 46-47; 880 NW2d 297 (2015), lv granted 499 Mich 934 (2016), this Court adopted the "principle of proportionality" standard from *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), as the appropriate standard for determining the reasonableness of a sentence under *Lockridge*. The *Steanhouse* Court held "that a sentence that fulfills the principle of proportionality under *Milbourn*, and its progeny, constitutes a reasonable sentence under *Lockridge*." *Steanhouse*, 313 Mich App at 47-48. Under this standard, a trial court is required to impose a sentence that is " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 636. In *Steanhouse*, this Court set forth a non-exclusive list of factors that Michigan Courts had previously considered under the proportionality standard, including,

> (1) the seriousness of the offense, (2) factors that were inadequately considered by the guidelines, and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct

while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Steanhouse*, 313 Mich App at 46 (citations omitted).]

At sentencing, the trial court provided a lengthy explanation for why the upward departure in this case was reasonable. In particular, the court referenced Gaulding's extensive criminal history, discussing at length the number, frequency, and general character of his prior convictions. The trial court determined that the applicable guidelines did not "capture the extent" of Gaulding's criminal history because it "capture[d]" only 4 of his 11 felony convictions and 7 of his more than 60 misdemeanor convictions. The court also considered Gaulding's potential for rehabilitation, observing that there had been an "extraordinary effort by the criminal justice system to give [him] every opportunity to amend [his] behavior" through probation, jail, and prison. The court observed that on more than one occasion, Gaulding was not released on parole until he had served his maximum sentence "demonstrating that [the] Michigan Department of Corrections did not feel it was in the public's best interest to have [Gaulding] discharged" before his maximum was served. In addition, the court considered unique factors in this case that were not encompassed by the guidelines, observing that Gaulding's conduct of stabbing O'Hara, leaving him in the road to die, and going "about his business" showed his "callousness and disregard for human life." This callous conduct, coupled with Gaulding's extensive criminal history, demonstrated to the trial court Gaulding's distorted view of the law and human life. On this record, the trial court's stated reasoning for imposing Gaulding's upward departure sentence met the threshold of proportionality pursuant to *Milbourn*, and was therefore a reasonable sentence as contemplated by *Lockridge*.[2]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro

---

[2] In challenging the proportionality of his departure sentence, Gaulding argues that the minimum sentence "has the appearance of the judge disagreeing with the jury's acquittal on the more serious charge, rather than reasonableness." However, the trial court provided a detailed explanation for why the 11-year upward departure was reasonable in light of the circumstances surrounding the offense and Gaulding's prior criminal record. Indeed, Gaulding recognizes that the trial court considered that his criminal history was inadequately considered by the guidelines, but seeks to diminish that factor with the unconvincing statement that his 61 prior misdemeanor convictions were merely "vehicle-related" and "nonviolent." He fails to acknowledge that seven of his prior felony convictions are not encompassed by the guidelines. Gaulding also fails to address his recidivism and poor prognosis for rehabilitation as appropriate considerations under the *Milbourn* proportionality standard.