*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROYDERRICK LEVAN COLLIER,

        Defendant-Appellant.

UNPUBLISHED
January 17, 2019

No. 339869
Muskegon Circuit Court
LC No. 16-005035-FC

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Royderrick Collier, appeals as of right his bench trial convictions of first-degree murder, MCL 750.316(1)(a); two counts of assault with the intent to do great bodily harm less than murder, MCL 750.84; and three counts of possession of a firearm while committing a felony (felony-firearm), MCL 750.227b. The trial court sentenced Collier as a fourth-offense habitual offender, MCL 769.12, to life imprisonment without parole for the first-degree murder conviction; 8 to 30 years' imprisonment for each of the two counts of assault with intent to do great bodily harm; and 5 years' imprisonment for each of the three counts of felony-firearm. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

On June 18, 2016, Collier shot and killed Naethon Sims. Witnesses testified that Sims was shot in the back and that, after Sims fell, Collier shot him again. Collier also shot but did not kill Sims's brother and Sims's friend. At trial, Collier argued that he acted in self-defense. He testified that while he was talking with Sims he saw Sims reach for his gun so he reached for his gun. He stated that he then heard a gunshot, and responded by firing two times in Sims's direction without looking. Collier testified that he saw Sims running toward the street and it seemed that he was running toward him. He said he heard another shot, so he shot in Sims's direction again. Yet, Collier added that he knew Sims was running away when he shot at him and that he was 10 to 12 feet away when he fired the second round of shots. Collier also testified that Sims's brother came running at him and gestured like he had a weapon, so he fired two more shots. He said that he did not know where those shots went and that he did not believe anyone

was shot.  The day after the shooting he left the area and lived in Arizona for a couple of months before being arrested.

## II.  WAIVER OF JURY TRIAL

## A.  STANDARD OF REVIEW

Collier argues that his jury trial waiver was not a voluntary and understanding waiver. "The adequacy of a jury trial waiver is a mixed question of fact and law." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009).  Generally, the trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).  However, Collier failed to raise this issue in the trial court; therefore it is unpreserved.  This Court reviews unpreserved constitutional issues for plain error affecting the defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## B.  ANALYSIS

"A criminal defendant has a constitutionally guaranteed right to a jury determination that he is guilty beyond a reasonable doubt." *Cook*, 285 Mich App at 422.  A defendant may waive his right to a jury trial with the approval of the trial court and the consent of the prosecutor.  *Id.*; MCR 6.401.  However, "[i]n order for a jury trial waiver to be valid . . . it must be both knowingly and voluntarily made." *Cook*, 285 Mich App at 422.

MCR 6.402(B) provides:

> Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury.  The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court.  A verbatim record must be made of the waiver proceeding.

Compliance with the requirements of MCR 6.402(B) creates a presumption that the waiver was knowing, voluntary, and intelligent.  *People v Mosly*, 259 Mich App 90, 96; 672 NW2d 897 (2003).

At a hearing, the trial court advised Collier that he had the constitutional right to choose either a jury trial or a bench trial.  The trial court asked for Collier's lawyer's recommendation. Collier's lawyer explained that he believed that Collier was much more knowledgeable than some of his clients.  Collier's lawyer added that he and Collier had debated the pros and cons of waiving a jury trial for a significant amount of time.  As a result, Collier's lawyer was comfortable with Collier's decision to proceed with a bench trial.  The trial court then asked Collier if he wished to "have a trial by the judge without a jury" and if he understood that he would be giving up his right to a jury trial.  Collier answered "yes" to each question.  Contrary to the requirements of MCR 6.402(B), the trial court did not inquire whether Collier's waiver of his right to a jury trial was voluntary.  However, in *Mosly*, 259 Mich App at 96, this Court explained that "compliance with the court rules only creates a presumption that a defendant's waiver was voluntary, knowing, and intelligent." Thus, "[i]f a defendant's waiver was otherwise knowingly,

-2-

voluntarily, and intelligently made, reversal will not be predicated on a waiver that is invalid under the court rules, because courts will disregard errors that do not affect the substantial rights of a defendant. *Id*. (citations omitted). Here, Collier signed a written waiver of his right to a jury trial that stated he was voluntarily waiving and relinquishing his right to a jury trial and was electing a bench trial. As a result, "although the trial court failed to comply with MCR 6.402(B), the record establishes that [Collier] understood that he had a right to a trial by jury and that he voluntarily waived that right." *Id*. at 99. Accordingly, Collier cannot demonstrate plain error affecting his substantial rights.

## III. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Next, Collier contends that there is insufficient evidence to sustain his convictions because the prosecution failed to disprove self-defense beyond a reasonable doubt.[1] When reviewing a sufficiency of the evidence claim, this Court reviews the evidence de novo. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). This Court reviews "the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*. "Further, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Id*.

### B. ANALYSIS

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *Id*. "The killing of another person in self-defense is justifiable homicide only if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002). "The touchstone of *any* claim of self-defense, as a justification for homicide, is *necessity*." *Id*. "[O]nce the defendant satisfies the initial burden of production, the prosecution bears the burden of disproving the common law defense of self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 710; 788 NW2d 399 (2010).

Collier asserts that he only fired after Sims brandished a gun and pointed it at him and only after he heard gunshots. However, the trial court did not find that part of Collier's testimony credible and instead relied on the testimony of other witnesses, who stated that Sims did not have a gun in his hand and who testified Collier walked up to and shot Sims a second time after Sims fell to the ground following the first shots. There was also testimony that, although Sims did have a gun in his pants, the gun was inoperable and could not be fired, which

---

[1] This issue was raised both in the brief filed by Collier's lawyer and in Collier's supplemental brief that was filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4.

-3-

allows for an inference that Sims did not fire a gun at Collier. Further, Collier did testify that he fired toward Sims while Sims had his back turned to him and was running away. Viewing the above evidence in the light most favorable to the prosecution, there was sufficient evidence to disprove that Collier was acting in self-defense when he shot and killed Sims.

## IV. DOUBLE JEOPARDY

### A. STANDARD OF REVIEW

Next, Collier argues that his convictions for three counts of felony-firearm violate his protections under the double jeopardy clause. "A challenge under the double jeopardy clauses of the federal and state constitutions presents a question of law that this Court reviews de novo." *People v Calloway*, 469 Mich 448, 450; 671 NW2d 733 (2003). However, Collier failed to raise this claim in the trial court so it is unpreserved and we review it for plain error. *Carines*, 460 Mich at 763.

### B. ANALYSIS

"The double jeopardy clauses of the United States and Michigan constitutions protect against governmental abuses for both (1) multiple prosecutions for the same offense after a conviction or acquittal and (2) multiple punishments for the same offense." *Calloway*, 469 Mich at 450. Here, Collier presents a double jeopardy challenge on the basis of multiple punishments for the same offense. In *People v Morton*, 423 Mich 650, 651; 377 NW2d 798 (1985), the Michigan Supreme Court held that a defendant could be convicted of multiple counts of felony-firearm arising out of separate felonies during a single transaction. Therefore, in this case, given that Collier was convicted of three separate felonies—first-degree murder and two counts of assault with intent to do great bodily harm—it was permissible for him to also be convicted of three separate counts of felony-firearm. Collier's double-jeopardy claim is wholly without merit.

## V. JUDICIAL BIAS

### A. STANDARD OF REVIEW

Lastly, Collier argues that the trial court was biased against him. Because the issue is unpreserved, our review is again for plain error affecting Collier's substantial rights. *Carines*, 460 Mich at 763.

### B. ANALYSIS

"A criminal defendant is entitled to a neutral and detached magistrate." *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011) (quotation marks and citation omitted). However, a defendant raising a judicial bias claim "must overcome a heavy presumption of judicial impartiality." *Id*. at 597-598 (quotation marks and citation omitted).

Collier claims that the trial judge exhibited bias by finding evidence of premeditation and deliberation despite the lack of facts to support his findings. However, the court was required to make factual findings, and, contrary to Collier's insinuations on appeal, there was sufficient evidence to support a finding of premeditation and deliberation given that witnesses testified that

Collier walked up to Sims after he had fallen to the ground and shot him a second time. Thus, we discern no judicial bias in the judge's findings. Next, Collier asserts that the judge demonstrated judicial bias against him by finding him guilty of three counts of felony-firearm in violate of the double-jeopardy clause. However, as explained above, Collier's three felony-firearm convictions are premised on the three separate felonies he committed with his firearm, so they do not violate the double jeopardy clause. Lastly, Collier argues that the judge made improper comments at sentencing about the judge's personal dislike about the illegal use of firearms show that the judge was biased against him. Collier does not explain how the trial court's generalized comments regarding gun violence in the community at his sentencing deprived him of a fair trial and Collier does not claim that the judge was biased at sentencing. Thus, under the circumstances present, Collier has failed to overcome the presumption of judicial impartiality. *Id.*

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle