# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERIC LAMOTHE THOMAS,

Defendant-Appellant.

UNPUBLISHED
February 20, 2018

No. 336269
Wayne Circuit Court
LC No. 16-005648-01-FH

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

A jury convicted defendant of one count of third-degree criminal sexual conduct (CSC-3), MCL 750.520d(1)(a), and one count of accosting a child for immoral purposes, MCL 750.145a, for sexually assaulting his 14-year-old neighbor. Defendant contends that his trial counsel was ineffective in failing to present into evidence the victim's forensic interview records. Defendant further accuses the trial judge of bias during the proceedings. We affirm defendant's convictions and sentences, but remand for the ministerial correction of his judgment of sentence.

## I. BACKGROUND

The victim testified that her family had been close with defendant for several years. Defendant had a key to the victim's house and often picked her and her siblings up from school. On the day in question, the victim was at home because she had been suspended from school for uniform violations. Defendant promised to keep an eye on her. Instead, he entered the victim's home and asked her a series of inappropriate sexual questions. After defendant left, the victim locked the doors and took a shower, forgetting that defendant could use his key to reenter. As the victim dressed in her bedroom, she heard the television turn on in the living room. She discovered that defendant had returned.

The victim described that defendant ordered her to remove her pants and she refused. The victim tried to avoid defendant by going into her mother's bedroom. Defendant followed her, however, and tackled her on her mother's bed. The victim testified that defendant forcefully removed her pants and penetrated her vagina with his penis. The victim was fearful and told no one of defendant's attack for several weeks. As a result, no physical evidence remained.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

During cross-examination at trial, defense counsel impeached the victim with comments she made while being interviewed at Kids Talk, a children's trauma advocacy center. Defendant contends that his attorney should have sought to present the entire Kids Talk record into evidence. The failure to present the Kids Talk record into evidence was prejudicial, defendant contends, as the jury requested to view it during deliberations and the request had to be denied.

Defendant failed to preserve his challenge by moving for a new trial or a *Ginther*[1] hearing in the trial court and our review is therefore "limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). "[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 777 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that a defendant's ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solomonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors the result of the proceedings would have differed. *Id*. at 663-664. The defendant must overcome the strong presumptions that his "counsel's conduct falls within the wide range of professional assistance," and that his counsel's actions represented "sound trial strategy." *Strickland*, 466 US at 689 (quotation marks and citation omitted).

Counsel's failure to present certain evidence "will only constitute ineffective assistance . . . if it deprived defendant of a substantial defense." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). When a case represents "a close credibility contest" with little or no physical evidence, "[d]efense counsel's failure to have admitted evidence critical to the issue of the credibility of the complainant" may be constitutionally deficient. *People v Dixon*, 263 Mich App 393, 397-398; 688 NW2d 308 (2004).

That said, defendant bears the burden of establishing the "factual predicate" for his ineffective assistance claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

> A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes hypotheses consistent with the view that his trial

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

lawyer represented him adequately. [*People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (quotation marks and citation omitted).]

Here, defendant failed to request a hearing in the lower court so that the Kids Talk documents could be placed on the record. Defendant has not presented the Kids Talk documents on appeal or requested permission to expand the record to do so. As a result, we have no grounds to find the subject evidence was "critical to the issue of credibility of the complainant." It is just as likely that the remainder of the Kids Talk record further inculpated defendant or bolstered the victim's credibility. As we must presume that counsel employed sound trial strategy, it is reasonable to infer that defense counsel reviewed the entirety of the Kids Talk record and employed the useful portions to discredit the victim. We may also infer that counsel declined to place the entire record into evidence because the remainder would damage the defense. Based on this record, we cannot find counsel's performance deficient.

Defendant also has not established that he was prejudiced by the absence of this evidence. Because we cannot speculate that the omitted evidence would have been exculpatory or discrediting, we cannot conclude that the jury likely would have acquitted had it seen the records.

In any event, defense counsel vigorously attacked the victim's credibility. Not only did counsel select helpful portions of the Kids Talk record to discredit the victim on cross-examination, counsel also elicited testimony to suggest that the victim fabricated her accusations out of revenge. Specifically, defense counsel presented evidence that defendant had recently reported the victim for being alone in her home with a young male friend without her mother's knowledge. The victim had been disciplined as a result. "The fact that defense counsel's strategy was unsuccessful does not render him ineffective." *People v Solloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016). Accordingly, defendant is not entitled to a new trial.

III. JUDICIAL BIAS

Defendant further argues that he was denied the right to a fair trial as a result of the trial judge's bias. Defendant contends that the trial judge "pierced the veil of judicial impartiality" at several points during the attorneys' questioning of the victim's mother, SC.

Defendant failed to preserve his challenge by raising it below, and our review is limited to plain error affecting defendant's substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). To merit relief, defendant must show that the trial judge's expressions of bias affected the trial's outcome, led to the conviction of an innocent defendant, or affected the "fairness, integrity, or public reputation" of the trial. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Jackson*, 292 Mich App at 598. The Supreme Court recently described "when a trial judge's conduct in front of a jury [deprives] a party of a fair and impartial trial." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015).

A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the

circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id.*]

"This is a fact-specific inquiry, and this Court considers the 'cumulative effect' of any errors." *People v Willis*, ___ Mich App ___; ___ NW2d ___ (Docket No. 334398, issued January 11, 2018), slip op at 4, quoting *Stevens*, 498 Mich at 171-172.

As noted in *Willis*, ___ Mich App at ___, slip op at 5:

One form of judicial bias is biased commentary in front of the jury. Reversal is proper "when the trial judge's . . . comments were such as to place his great influence on one side or the other in relation to issues which our law leaves to jury verdict." In general, however, a trial judge's comment that is critical of or hostile to a party or his counsel is not sufficient to pierce the veil of judicial impartiality. A trial judge's rulings or opinions do not pierce the veil of judicial impartiality "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." [Citations omitted.]

We note that the prosecution's first two witnesses, the victim and her teenage cousin, often gave long, narrative answers that did not truly respond to the questions asked. The court advised both young women to listen to the attorneys' questions, answer the questions asked, and not volunteer additional information. At the outset of SC's testimony, her answers did not suffer this infirmity. Following a hearsay objection, SC apparently felt she had done something wrong and apologized on the stand. The court advised SC to speak only when the attorney asked a question and offered, "And you're doing great. When you listen, just listen carefully to the question he ask[s]. And all answer [sic] that question. Don't volunteer. Then they'll ask you another question. All right."

Defendant specifically complains of commentary made shortly thereafter. During direct examination, the prosecutor inquired about defendant's relationship with the family immediately following the alleged assault, before the victim reported the event.

*Q*. And when did this arrangement change?

*A*. It just kinda fell apart. Like, I would get calls from my son saying nobody came—

*Mr. Blake* [defense counsel]: Your Honor, I object to the user [sic].

(Witness turns and faces Judge)

-4-

*A.* Calls from my son from school.

*The Court*: No. That's all right. I'm gonna overrule that. I don't think there's anything having to do with the truth or falsity of what was stated. It's just what is in the mind of this witness. And why she was acting and doing what she did. So you may answer that question.

Shortly thereafter, SC testified that she did not know why defendant stopped driving her children to and from school, and defendant once again argues that the trial judge's interjected commentary showed judicial bias:

*A.* I can only ass - -, well, initially I didn't know. But so I was just, they hadn't been in close interactions with each [other] in that time period. Like, so it was kinda-I didn't do [sic] know. Like at the time I didn't know. But after the fact.

*Q.* Okay.

*A.* It made me think about it.

*The Court*: That's a very good answer. If you don't know the answer you say I do not know.

On cross-examination, defense counsel asked SC if she "recall[ed] what kind of clothing [the victim] had on" on the day of the assault. SC said, "No," and explained that it was just a regular day for her and so she did not take note of such details. The following conversation between the court and the witness ensued:

*The Court.* No, is a terrific answer.

*The Witness.* I'm sorry.

*The Court.* You don't have to say why. I mean, as soon as you say because you're going to f[a]r. Okay.

*The Witness.* Yes, sir.

*The Court.* No is a terrific answer. Or yes if the answer is yes.

*The Witness.* Yes, sir.

*The Court.* Or, I don't know. Those are great answers. . . .

Defendant also takes issue with the trial judge's response to the testimony given shortly after:

*Q.* Ma'am, it's a simple question. I asked you did you receive instructions from the hospital as to what to do for being a rape victim?

*A*. Yes. But they said nothing pertaining to clothing.

*Q*. Okay. You answered my question. You said nothing pertaining to clothing—

*The Court*: When you say yes that's terrific. And then stop talking, okay[?] If Mr., if the Prosecutor wants you to expand it he, he's a good attorney. So he'll ask you. Okay[?]

*The Witness*. Okay.[2]

Again, briefly after this interaction, the court reminded SC to answer, "I do not know," if she was uncertain about something:

*Q*. In fact, in her statement to the police [the victim] doesn't even mention where in the house this assault took place; would you agree with that?

*A*. Okay.

*Q*. Are you agreeing with that?

*A*. If you say so.

*Q*. Well, I don't want you to take my word?

*The Court*. No. This is a perfect time to use that I don't know if you don't know.

*The Witness*. Yeah. I don't know. . . .

We discern no hint of judicial bias in the court's comments. Rather, the court patiently (and repeatedly) guided the witnesses regarding the proper way to answer questions on the stand. This is part of the court's duty under MRE 611(a):

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Trial courts have "wide discretion and power in matters of trial conduct." *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006) (quotation marks and citation omitted). And a trial judge may intervene in the questioning of a witness " 'to promote expedition, and prevent

---

[2] It appears that the court misspoke as this comment was made during cross-examination when defense counsel was questioning the witness, not the prosecutor.

unnecessary waste of time, or to clear up some obscurity.' " *Stevens*, 498 Mich at 174, quoting Code of Judicial Conduct, Canon 3(A)(8). It was certainly in the court's power to direct witnesses to answer the question asked and to indicate when they did not know the answer. The trial judge could have used blander language when directing SC, but the words chosen did not imply to the jury that the judge favored the prosecution over the defense. Accordingly, defendant is not entitled to relief.

Defendant further asserts that defense counsel was ineffective in failing to object. However, counsel is not ineffective for failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## IV. CORRECTION OF JUDGMENT OF SENTENCE

During our review of this case, we noted that the trial court inadvertently listed on defendant's judgment of sentence that he was convicted of first-degree, rather than third-degree, CSC. The court sentenced defendant relative to the correct offense so resentencing is not required. However, we remand for the ministerial correction of the judgment of sentence.

We affirm. We remand for the ministerial correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle