*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 14, 2021

Plaintiff-Appellee,

v

No. 349205
Kent Circuit Court
LC No. 18-007630-FC

WILLIE MARTIN BRYANT,

Defendant-Appellant.

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life imprisonment for the felony murder conviction and a prison term of 40 to 100 years for the armed robbery conviction, both to be served after the statutory two-year prison term for felony-firearm. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from the armed robbery of a Marathon gas station in the City of Wyoming and the fatal shooting of an employee, Shannon Schoen (Schoen). In the early morning of May 21, 2018, a man wearing a hooded sweatshirt entered the gas station where Chad Bussa (Bussa), the owner, and Schoen were working. Bussa testified that the man pointed a gun at him and demanded that Bussa "give him everything" he had. When Bussa replied that he didn't have anything, the man went up to the cash register, shot Schoen, and jumped over the counter. Bussa fled the store to seek help, and saw the man get into a white Cadillac. Bussa was unable to identify the robber as defendant. Schoen died at the scene.

Eyewitnesses testified to seeing a man in a hooded sweatshirt enter the station, leave, and get into a white Cadillac; a witness testified that there were other people in the car and that the man got into the backseat. Khristoffer Idema (Idema) testified that he saw a man in a hooded sweatshirt inside the station shortly before the shooting, and she identified that man as defendant both in a photographic lineup and at trial. Surveillance footage collected from the station and from

-1-

a nearby hotel showed a man in a hooded sweatshirt purchase a bottle of Mello Yello soda from Schoen (while standing in line next to Idema), leave the station, and then return shortly thereafter. The footage showed the man bring a bottle of water to the cash register as if for purchase; when Schoen opened the register, the man produced a handgun from his waistband and fired it in Schoen's direction, then jumped over the counter, placing his hand on the counter's surface. Footage from before the shooting also showed another man, identified as Gary Bryant (Bryant), enter and leave the station.

Several hours after the murder, a white 2002 Cadillac DeVille belonging to Bryant was detained and Bryant was arrested. Bryant told police that defendant was the shooter and that Bryant and another man, Jermaine Green (Green), had been waiting in the Cadillac outside the station for defendant. Bryant and Green testified at trial, admitting their involvement in the crime and identifying defendant as the shooter. Bryant testified that after defendant returned to the car, he said that he had "shot her," and Green testified that defendant returned to the car holding a gun. Both men entered into plea bargains in return for their testimony, which fact was disclosed to the jury. Both men additionally testified that they had smoked crack cocaine on the day of the robbery and had regularly smoked crack cocaine for decades.

Officers from the Forensic Science Unit of the Wyoming Police Department testified that a Mello Yello bottle was found inside the Cadillac, and that defendant's fingerprints were found at the scene on a cooler and on a bloody water bottle (the bottle shown in the surveillance video as having been in the possession of the shooter). Defendant's palm print was also matched to a palm print on the counter. A DNA expert testified that there was "moderate support" for a finding that defendant's DNA was present on the cap to the Mello Yello bottle.

A Grand Rapids police detective testified that on the night of the shooting, someone using a phone number associated with defendant called an inmate at the Kent County Jail; the call was recorded. The person speaking to the inmate said that they had "caught a body." A witness who worked as a Meijer store greeter testified to an encounter with defendant on May 20, 2018—the day before the shooting—in which defendant, who was wearing a hooded sweatshirt, had displayed a handgun and pointed it at him. A photograph from the encounter was also entered into evidence.

At the close of the prosecution's proofs, defense counsel moved for a directed verdict; the trial court denied the motion. Subsequently, defense counsel did not present any evidence or witnesses, but did argue that there were weaknesses in the prosecution's case, including as to eyewitness identification, and he further argued that the investigation was tainted by confirmation bias designed to prove that defendant was the offender.

The jury convicted defendant as described. Defendant subsequently moved the trial court for a new trial or a *Ginther*[1] hearing on the issue of his trial counsel's effectiveness; the trial court denied the motion.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

This appeal followed. After filing his claim of appeal, defendant moved this Court to remand for a *Ginther* hearing, which motion this Court denied without prejudice.[2]

## II. STANDARD OF REVIEW

A claim of ineffective assistance of counsel presents a mixed question of fact and law; "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "This Court reviews de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and whether, without the error, the result of the proceedings would have been different." *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018). "A finding is clearly erroneous if 'the reviewing court is left with a definite and firm conviction that a mistake has been made.' " *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014), quoting *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). In reviewing findings of fact, "[r]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008) (quotation marks, citation, and alteration omitted), amended 481 Mich 1201 (2008).

## III. ANALYSIS

On appeal, defendant argues that we should remand this matter to the trial court for a *Ginther* hearing on the issue of his trial counsel's effectiveness. We disagree.

"To establish ineffective assistance of counsel, defendant must prove that counsel's deficient performance denied him the Sixth Amendment right to counsel and that, but for counsel's errors, the proceedings would have resulted differently." *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). It is the defendant's burden to establish the factual predicate for his or her claim of ineffective assistance of counsel. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). When the trial court does not hold an evidentiary hearing, if the defendant "set[s] forth any additional facts that would require development of a record to determine if defense counsel was ineffective," a remand to the trial court for an evidentiary hearing is appropriate. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). A remand is not necessary when the defendant fails to demonstrate that additional facts would advance his or her claim of ineffective assistance of counsel. See *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009).

Defendant argues that his counsel did not share discovery materials with him until the day of trial, impeding his ability to assist in his own defense. Defendant has not established the factual predicate for his claim. *Hoag*, 460 Mich at 6. Trial counsel's failure to share discovery materials

---

[2] See *People v Bryant*, unpublished order of the Court of Appeals, entered March 3, 2020 (Docket No. 349205).

with a defendant in a timely manner may be unreasonable if that failure negatively impacts counsel's ability to prepare for trial or to decide what strategy to pursue. See *People v Jackson*, 292 Mich App 583, 601; 808 NW2d 541 (2011). In order to merit relief, however, the defendant must "explain what he would have done differently, either before or at trial, if he had received any discovery materials sooner" and how counsel's failure caused prejudice by undermining the reliability of the resulting verdict. See *id*.

In this case, defendant argues that trial counsel's failure to share discovery in advance of trial prevented him from identifying a particular witness who could have "testified favorably" for the defense. Defendant identifies this witness as Joyce Jones, and states that she could testify favorably, not about the robbery itself, but about the incident concerning his display of a handgun at the Meijer store the day before the robbery. Defendant does not specify what this proposed testimony might be, or why it would have cast doubt on the jury's verdict. Therefore, he has not established that an evidentiary hearing is necessary regarding this issue. See *Chapo*, 283 Mich App at 369. Further, defendant does not explain how the absence of this testimony prejudiced him or how its inclusion would have altered the proceedings against him in light of the overwhelming evidence in support of the jury's verdict. See *Jackson*, 292 Mich App at 601.

Defendant also argues that his counsel's failure to share discovery in advance of trial left him too "shocked and surprised" by the testimony of Green and Bryant to testify on his own behalf. While only defendant knows the truth of his mental state during the trial, we disagree that relief is warranted. "[T]he ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Defendant does not argue that he was unaware of his right to testify in his own defense or that he was somehow coerced into remaining silent, but only that he elected not to testify on the advice of counsel, and would have made a different choice if he had had more advance notice that Green and Bryant planned to testify against him. We are not convinced that an evidentiary hearing would shed any further light on this issue. See *Jackson*, 292 Mich App at 601. Moreover, regarding prejudice, defendant cursorily argues that he was prevented from presenting the theory that he was "framed" by Green and Bryant. Defendant has not demonstrated that this theory, supported only by his testimony, would have made a difference in the outcome of his trial in light of the overwhelming evidence against him. *Id*.

Defendant also argues that trial counsel was ineffective because he failed to object when a police detective repeatedly identified defendant as the "suspect" seen on security footage committing the crimes. We agree that when a witness "is in no better position than the jury to make an identification from a video or photograph," identification by the witness invades the province of the jury. See *People v Fomby*, 300 Mich App 46, 52-53; 831 NW2d 887 (2013). Therefore, the detective's testimony was improper. See *id*. at 52-53. Still, there may have been strategic reasons for trial counsel not to object. For instance, objecting may have only drawn further attention to the detective's alleged special knowledge. See, e.g., *People v Unger*, 278 Mich App 210, 22-243; 749 NW2d 272 (2008). We will not substitute our own judgment of trial counsel's strategy or assess trial counsel's competence only with the benefit of hindsight. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Regardless, even if defense counsel's failure to object was objectively unreasonable, in light of all the other evidence pointing to defendant's guilt, including identification by eyewitnesses, and the fact that the jury was able to view the video for itself, defendant has not carried his burden of showing that there was a

reasonable likelihood that the improper testimony affected the outcome of his trial. See *Dixon*, 263 Mich App at 396.

We similarly find no merit in defendant's related argument that his own counsel identified defendant as the suspect shown in the security footage. To support this argument, defendant cherry-picks what appears to have been a slight misstatement by his trial counsel, which was quickly corrected:

> And I know it's uncomfortable to focus on because it's probably the worst part of the video that we saw. The second shot we see [defendant] comes up to the counter, he has a water bottle in one hand, he switches it to the other and I say [defendant], but the person in the video that they identify as [defendant], and he sets the bottle down.

In context, it is clear that although defense counsel mistakenly referred to the person on the video as "defendant," he nearly immediately corrected himself and stated that it was the person the prosecution referred to as defendant. A minor misstatement is hardly objectively unreasonable performance, especially when the jurors were instructed that the arguments of attorneys are not evidence, and jurors are presumed to follow their instructions. *People v Benton*, 294 Mich App 191, 201-202; 817 NW2d 599 (2011). And again, even assuming that trial counsel's misstatement constituted deficient performance, defendant would remain unable to prove that it undermined the reliability of the jury's verdict. See *id*.

Defendant also argues that trial counsel was ineffective because he failed to object to the admission of testimony and a photograph concerning the incident at Meijer on the day before the shooting. Before trial, the prosecution gave notice of its intention to present evidence under MRE 404(b) that on the day before the armed robbery and fatal shooting, defendant had been involved in an incident at Meijer in which defendant had displayed a gun to a store greeter who had asked him to show a receipt after an antitheft alarm was triggered. The prosecution contended that this evidence was admissible "for identity purposes" because defendant was "depicted wearing the same clothing that was worn at the time of the homicide." Defense counsel did not object to the admission of this evidence, but did request a limiting instruction. Defendant maintains that an evidentiary hearing is necessary to discover whether there was trial strategy involved in trial counsel's decision not to object to this evidence. We disagree.

In order for evidence to be admissible under MRE 404(b)(1), "(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; and (3) the probative value of the evidence must not be substantially outweighed by [the danger of] unfair prejudice." *People v Danto*, 294 Mich App 596, 599; 822 NW2d 600 (2011) (quotation marks and citation omitted; alteration in original). This Court has described MRE 404(b)(1) as an *inclusionary* rule "because it provides a nonexhaustive list of reasons to properly admit evidence that may nonetheless also give rise to an inference about the defendant's character." *Id*. (quotation marks and citations omitted). "Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity." *Id*. (quotation marks and citation omitted).

As the prosecution argued and defense counsel conceded before the trial court, the photograph was relevant because it tended to show that defendant wore a particular sweatshirt in

close temporal proximity to the commission of the crime. Moreover, as the prosecution points out on appeal, the testimony and photograph also demonstrated that defendant had access to a firearm shortly before the shooting. Because the evidence was relevant and admissible for a proper purpose, the trial court would not have erred if it had admitted this evidence under MRE 404(b) even over an objection by defense counsel. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). In any event, there was no reasonable likelihood that the exclusion of this evidence would have altered the jury's guilty verdict given the extent of other evidence presented at trial. See *Dixon*, 263 Mich App at 396. An evidentiary hearing to explore this issue further is unnecessary. See *Chapo*, 283 Mich App at 369.

Affirmed.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Mark T. Boonstra