*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICHARD ANTHONY ALLEN-BASS,

Defendant-Appellant.

UNPUBLISHED
October 09, 2024
11:34 AM

No. 366003
Washtenaw Circuit Court
LC No. 22-000044-FC

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

Defendant, Richard Anthony Allen-Bass, appeals as of right his jury-trial conviction for one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration of a complainant under 13 years of age by defendant 17 years of age or older). Allen-Bass was sentenced to 25 to 50 years' incarceration for the CSC-I conviction. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of Allen-Bass's sexual penetration of then-seven-year-old complainant at the residence of complainant's mother, Patricia Myia McDaniel, during the fall of 2020. In January 2021, Child Protective Services (CPS) removed complainant and her siblings from McDaniel's care for purposes unrelated to the underlying sexual abuse allegations. CPS placed complainant in the custody of McDaniel's cousin, AB.

In July 2021, complainant disclosed to AB and Elizabeth Bury, a foster care specialist, that she had been sexually assaulted by "Richie Rich," who she subsequently identified as Allen-Bass. Complainant provided that when she was about seven years old, complainant was asleep in her bedroom with her siblings when McDaniel awakened complainant. McDaniel then stated to complainant, "Let's do grown up stuff." McDaniel grabbed complainant's hand and the two walked into McDaniel's bedroom where Allen-Bass was waiting, despite complainant's refusal. McDaniel lay in bed, and "Richie Rich put his mouth on [McDaniel's] private" while complainant watched.

-1-

McDaniel then placed complainant on the bed, and complainant felt "Richie Rich" breathing with his mouth "on her privates," which complainant identified as the body part she uses to urinate. During trial, complainant consistently testified that Allen-Bass placed his mouth on her genitals; she wavered between whether or not she was fully clothed when she sensed Allen-Bass's "breathing and teeth" on her genitalia. Complainant provided that McDaniel remained in the room as a silent observer during the alleged sexual abuse, and complainant's siblings were present in the separate "kids' room" in the home. After the incident, complainant returned to the shared children's bedroom to sleep. After a three-day jury trial, Allen-Bass was convicted of CSC-I, and he was sentenced to a mandatory minimum incarceration term of 25 years under MCL 750.520b(2)(b).[1] This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE & GREAT WEIGHT OF THE EVIDENCE

Allen-Bass argues that there was insufficient evidence to properly convict him of CSC-I, particularly regarding the element of sexual penetration, or, alternatively, that the verdict was against the great weight of the evidence. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Byczek*, 337 Mich App 173, 182; 976 NW2d 7 (2021). In evaluating a claim concerning the sufficiency of the evidence, we review the evidence in a light most favorable to the prosecution to discern whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018). When reviewing a sufficiency claim on appeal, we "must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007).

A trial court's decision whether to grant or deny a motion for a new trial is reviewed for an abuse of discretion. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

To convict a person of CSC-I, the prosecution must establish beyond a reasonable doubt that the accused engaged in sexual penetration of a person under 13 years old. MCL 750.520b(1)(a). Sexual penetration includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." MCL 750.520a(r). Under the aforementioned definition, penetration generally includes any intrusion into the vagina or the labia majora. *People v Lockett*, 295 Mich App 165, 188; 814 NW2d 295 (2012). Notably, our Supreme

---

[1] We note that Allen-Bass and McDaniel were codefendants during the three-day jury trial; however, each person was tried before a separate jury. McDaniel was ultimately convicted of CSC-I for her role in aiding and abetting Allen-Bass's sexual abuse of complainant.

Court has reasoned that penetration into the vagina is not necessary to establish CSC-I if the alleged sexual act is cunnilingus. See *People v Lemons*, 454 Mich 234, 254; 562 NW2d 447 (1997) (opining cunnilingus "by definition, does not require penetration"). Rather, cunnilingus is categorized as a form of sexual penetration because the act entails "the placing of the mouth of a person upon the external genital organs of the female which lie between the labia, or the labia itself [sic], or the mons pubes [sic]." *People v Legg*, 197 Mich App 131, 133; 494 NW2d 797 (1992) (quotation marks and citation omitted).

Because a complainant's testimony concerning a defendant's commission of sexual acts constitutes sufficient evidence to support a CSC-I conviction, a complainant's testimony that the defendant touched a "urethral opening, vaginal opening, or labia" with his or her mouth may establish sexual penetration through cunnilingus. *Legg*, 197 Mich App at 133. The presentation of conflicting evidence does not disturb the sufficiency of the complainant's testimony because, as the trier of fact, the jury may select which evidence to believe. *People v Bailey*, 310 Mich App 703, 714; 873 NW2d 855 (2015). Rather, the pertinent inquiry is if the jury opted to believe said evidence, whether they would be justified in convicting the defendant. *Id*.

As a preliminary matter, we note that this sufficiency issue was previously addressed by this Court in *People v McDaniel*, unpublished per curium opinion of the Court of Appeals, issued June 20, 2024 (Docket No. 365866), pp 4-6,[2] when McDaniel, who was convicted of CSC-I as an aider and abettor of Allen-Bass's sexual abuse of complainant, argued that her conviction should be vacated because the prosecution failed to prove that Allen-Bass sexually penetrated complainant. This Court disagreed, opining there was sufficient evidence that Allen-Bass performed cunnilingus, and it affirmed McDaniel's conviction. *Id*. at 5-6, 10. Nonetheless, we will substantively address Allen-Bass's arguments on appeal.

MCL 750.520b(1) provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person" under various circumstances, including, under Subsection (1)(a), when "[t]hat other person is under 13 years of age." MCL 750.520b(2)(b) further delineates, "For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years." Neither complainant's age nor Allen-Bass's age are contested by either party. Complainant was seven years old at the time of the alleged sexual abuse. Accordingly, the primary issue is whether the evidence was sufficient to establish beyond a reasonable doubt that Allen-Bass engaged in sexual penetration with complainant. More to the point, the statute under which Allen-Bass was charged defines sexual penetration to include "cunnilingus" and the primary issue is whether there is sufficient evidence of that particular type of sexual penetration. MCL 750.520a(r).

During the jury trial proceeding, complainant testified that while she was lying on McDaniel's bed, Allen-Bass lowered her pajama pants, as he "sneaked and pulled them down." Complainant further asserted that Allen-Bass placed his mouth on her "privates," she could sense Allen-Bass breathing on her "privates," and complainant further felt Allen-Bass's teeth on her

---

[2] "Unpublished opinions are not binding authority, but they may be persuasive." MCR 7.215(C)(1); *People v Kloosterman*, 296 Mich App 636, 641 n 2; 823 NW2d 134 (2012).

skin. Complainant additionally clarified that her "privates" referred to her genitals, identifying her "privates" as the body part she uses to urinate. While we recognize that complainant did not consistently testify that she was unclothed during the underlying incident, as complainant provided that she sensed Allen-Bass's breathing and teeth through her pajama bottoms, this inconsistency does not, under our caselaw, alter the sufficiency of her testimony. Rather, her conflicting statements resulted in a credibility issue for the jury to decide. See *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008) (stating, "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses").

Allen-Bass further advances that the evidence was insufficient to prove he performed cunnilingus because complainant's statement that she felt Allen-Bass's breath and teeth on her "privates" only established sexual contact, as opposed to penetration. However, the CSC statute and pertinent caselaw recognize cunnilingus as sexual penetration whether or not actual entry of the vaginal canal takes place. Oral contact with female genitalia is sufficient. MCL 750.520a(r); see *Lemons*, 454 Mich at 255 (noting, "Although we have found that penetration for the purpose of establishing fellatio requires actual penetration rather than mere kissing or contact . . . the distinction is illogical where the victim testifies without objection that she performed oral sex and placed her face on the defendant's vagina").

Complainant asserted that she sensed Allen-Bass's mouth and teeth on the skin of her "privates," which she categorized as the area of her body that she used to urinate. That, coupled with the later recollection that her pajama pants were partially removed or pulled down during this, sufficiently demonstrated sexual penetration via cunnilingus. See *Legg*, 197 Mich App at 133 (opining that the complainant's testimony providing that the defendant touched "[t]he part [of her body] that I go to the bathroom with" with his mouth supported the defendant's CSC-I conviction because, the "[d]efendant's touching with his mouth of the urethral opening, vaginal opening, or labia establish cunnilingus"). Thus, viewing the evidence in the light most favorable to the prosecution, and resolving credibility contests in favor of the jury verdict, a rational trier of fact may conclude complainant's testimony established that Allen-Bass sexually penetrated her through cunnilingus in violation of MCL 750.520b(1)(a). See *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016) (stating, "Given [the complainant's] testimony, the evidence, when viewed in a light most favorable to the prosecution, was sufficient to support the trial court's finding that sexual penetration occurred beyond a reasonable doubt").

Allen-Bass further asserts that the trial court abused its discretion when it denied his motion for a new trial because Allen-Bass's CSC-I conviction was against the great weight of the evidence, particularly considering complainant's hesitant and inconsistent testimony regarding the underlying events, rendering complainant incredible. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Furthermore, "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Rather, "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it . . . or contradicted indisputable physical facts or defied physical

-4-

realities, the trial court must defer to the jury's determination." *Id*. (quotation marks and citation omitted).

As previously detailed, while complainant provided inconsistent testimony regarding whether she remained fully clothed during the underlying incident, it was for the jury to determine which of complainant's statements it accredited, and whether her distressed demeanor at trial rendered her more or less credible. See *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008) (providing, "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses"). In issuing its guilty verdict, the jury determined that complainant was less than 13 years old when Allen-Bass placed his mouth on complainant's genital area, in an act that amounted to cunnilingus, on the basis of the proofs presented at trial, which included complainant's testimony. Moreover, it was reasonable for the jury to conclude that Allen-Bass's narrative of the underlying events was less persuasive, when compared to complainant, considering Allen-Bass's varying statements to law enforcement concerning his relationship with McDaniel, and whether he engaged in sexual acts with McDaniel while her minor children were present in her residence. See *People v Horton*, 341 Mich App 397, 404-405; 989 NW2d 885 (2022) (recognizing, "In most criminal sexual conduct cases there are no nonparticipant witnesses to the crime, which reduces the cases to weighing the defendant's credibility against that of the victim") (quotation marks and citation omitted).

In sum, there was sufficient evidence presented to sustain Allen-Bass's CSC-I conviction, and the verdict was not against the great weight of the evidence. Accordingly, Allen-Bass's CSC-I conviction should be affirmed.

III. *IN CAMERA* MOTIONS

Allen-Bass also argues that the trial court abused its discretion when it denied his motions for *in camera* review of complainant's counseling records because there was a reasonable probability that the privileged records were likely to contain material information necessary to his defense. We disagree.

We review discovery rulings for an abuse of discretion. *People v Jack*, 336 Mich App 316, 321; 970 NW2d 443 (2021). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. at 322 (quotation marks and citation omitted). "Discovery should be granted where the information sought is necessary to a fair trial and a proper preparation of a defense." *People v Davis-Christian*, 316 Mich App 204, 207; 891 NW2d 250 (2016) (quotation marks and citation omitted). "Nevertheless, defendants generally have no right to discover privileged records absent certain special procedures, such as an *in camera* review of the privileged information conducted by the trial court." *Id*. at 207-208, citing MCR 6.201(C)(1) and (2).

When pursuing privileged records, a person must demonstrate a "good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *People v Stanaway*, 446 Mich 643, 677; 521 NW2d 557 (1994). Once it satisfies this threshold, the trial court should conduct an *in camera* inspection of the privileged records. *Id*. at 678-679. If the records feature evidence that is reasonably necessary to the defense, the court must provide said evidence. *Id*. at 649-650.

-5-

However, disclosure is improper "when the record reflects that the party seeking disclosure is on a fishing expedition to see what may turn up." *Id*. at 680 (quotation marks and citation omitted). "A defendant is fishing for information when he or she relies on generalized assertions and fails to state any specific articulable fact that indicates the privileged records are needed to prepare a defense." *Davis-Christian*, 316 Mich App at 208 (quotation marks and citation omitted). In a criminal sexual conduct prosecution, an *in camera* review "promotes the state's interests in protecting the privacy rights of the alleged rape victim while at the same time safeguards the defendant's right to a fair trial." *Id.* (quotation marks and citation omitted).

In *Stanaway*, 446 Mich at 680-684, our Supreme Court employed the aforementioned standards to discovery requests in a consolidated appeal featuring two defendants, Stanley Caruso and Brian Stanaway. The first defendant, Stanaway, solely advanced "a generalized assertion that the [complainant's] counseling records may contain evidence useful for impeachment on cross-examination," which was inadequate to show a reasonable probability that the records featured material information for his defense, and his "need" for the evidentiary item may be applicable to every case involving criminal sexual conduct allegations. *Id*. at 681. Comparatively, the second defendant, Caruso, contended that the complainant "suffered sexual abuse by her biological father before this allegation of abuse, the nonresolution of which produced a false accusation, and factual support for some sexually aggressive behavior, namely, writing a letter to her mother's live-in boyfriend inviting him to have sex with her in his car." *Id*. at 682-683. The *Stanaway* Court determined that the *in camera* review of privileged records may have been appropriate in Caruso's case considering the specific basis of his request and document in support thereof. *Id*. at 683.

In the instant matter, Allen-Bass's *in camera* motions possess a greater likeness to that of defendant Stanaway because of the unsubstantiated nature of Allen-Bass's claims. In his initial motion, Allen-Bass contended that during the preliminary examination, complainant admitted that she suffered from "mental problems," and she attended therapy, indicating that complainant's counseling records may reveal evidence of her inability to properly advance a CSC-I claim. In his second motion, which Allen-Bass jointly filed with his codefendants, the brief provided that a "defendant," without specifying which defendant in particular, possessed knowledge that (1) complainant suffered from schizophrenia, attention-deficit/hyperactivity disorder (ADHD), and other mental health disorders, (2) complainant maintained suicidal and homicidal ideations, in addition to anger management issues, (3) complainant informed a hospital employee that she was not a sexual abuse victim, and (4) complainant frequently conjured up false or imaginary scenarios. Furthermore, the parties were "specifically looking for records that contain statements or statements relevant to whether [complainant] was sexually assaulted and whether she was truthful in making such statements," as there was "specific reason to believe [complainant] may have told her therapist that she was not sexually assaulted because she made such statements to others."

And while evidentiary support is not per se necessary to receive an *in camera* hearing, something more than mere belief concerning complainant's capacity to properly advance sexual abuse allegations is needed. See *Davis-Christian*, 316 Mich App at 212-213 (providing, "Unlike defendant Caruso, who arguably articulated a need to ascertain a specific piece of evidence to prove a fact material to his defense, defendant's assertion of need merely voices a hope of corroborating evidence, untethered to any articulable facts"). While Allen-Bass contended that complainant herself believed she suffered from mental health ailments, the record indicates otherwise. During the preliminary examination, complainant shared that she participated in

therapy for a "long time" after the alleged sexual abuse.  The following exchange transpired after her disclosure:

> *Mr. Goldstein* [codefense counsel]:  How did you end up going to therapy?
>
> *Complainant*:  Because I got mental problems.
>
> *Mr. Goldstein*:  Sorry?
>
> *Complainant*:  I got mental problems.
>
> *Mr. Goldstein*:  You got mental problems?
>
> *Complainant*:  Yes.
>
> *Mr. Goldstein*:  Okay.  Who decided that you had mental problems and needed to go to therapy?  Did you or did somebody else?
>
> *Complainant*:  Tee.
>
> *Mr. Goldstein*:  I'm sorry?
>
> *Complainant*:  Teetee.
>
> *   *   *
>
> *Mr. Goldstein*:  So, at some point, you went to live with Teetee?
>
> *Complainant*:  Yes.
>
> *Mr. Goldstein*:  And you told her that you had mental problems?
>
> *Complainant*:  No.  She said that I got mental problems.
>
> *Mr. Goldstein*:  And so, she took you to a therapist?
>
> *Complainant*:  Yes.

Thus, complainant did not personally believe that she suffered from any "mental problems," rather, "Teetee," who was subsequently identified as AB, informed complainant that complainant may require therapy because of alleged mental health issues.  Furthermore, the "therapist" complainant was referring to was a foster care worker named "Elizabeth," presumably Elizabeth Bury, who does not appear to be a licensed therapist or counselor.  Accordingly, we question whether there were counseling records to disclose in the first instance, because while complainant categorized her conversations with the foster care worker as "therapy," there is no indication that complainant participated in counseling sessions, resulting in any sort of discoverable documents.  Even assuming, arguendo, that such counseling records were available, a hunch that they *could* contain a previous false allegation of sexual assault or diagnoses of mental illness was insufficient to establish the threshold showing of reasonable probability.  See *Davis-Christian*, 316 Mich App at

212 (opining, "Defendant is attempting to use the complainant's statement as a way to access privileged information to 'fish' for evidence that may enhance his defense strategy.").

We recognize that one may liken Allen-Bass to defendant Caruso, as Allen-Bass cited particular diagnoses and mental health ailments in order to justify his requests for *in camera* review of complainant's purported counseling records. But Allen-Bass neglected to establish how his need for the privileged records was distinct from that in any criminal sexual conduct matter, and the fact that complainant may have attended counseling was not a proven fact that demonstrated a reasonable probability that the requested records were likely to contain material information necessary to Allen-Bass. See *Stanaway*, 446 Mich at 695 (providing, "defendant Stanaway's generalized assertion of a need to attack the credibility of his accuser is not sufficient to establish the necessary showing of a reasonable probability that the records contain information material to his defense to overcome the applicable statutory privileges"). Thus, in consideration of the standards iterated in *Stanaway* and the generalized, uncorroborated contentions raised by Allen-Bass, we conclude that the trial court did not abuse its discretion by denying Allen-Bass's motions for *in camera* review of complainant's privileged records.

## IV. JUDICIAL BIAS

Allen-Bass argues that he was denied a fair trial because the trial court's questioning of complainant, and its reiteration of complainant's testimonial statements before the jury, pierced the veil of impartiality. We disagree.

To preserve a claim of judicial impartiality or bias, the litigant must object to the alleged misconduct at trial. *People v Stevens*, 498 Mich 162, 180 n 6; 869 NW2d 233 (2015). While Allen-Bass raised the general matter of judicial bias in his motion for a new trial, Allen-Bass failed to object to the trial court's alleged misconduct during the three-day jury trial, or address the court's behavior during complainant's testimony in the aforementioned motion. Therefore, this issue is unpreserved for appellate review.

Generally, the matter of whether judicial impartiality deprived a defendant of due process is a question of constitutional law that we review de novo. *Stevens*, 498 Mich at 168. However, because this issue is unpreserved, our review is limited to plain error affecting substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). As provided in *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021) (quotation marks and citation omitted):

> To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights. An error affects substantial rights when it impacts the outcome of the lower-court proceedings. Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence.

"A criminal defendant is entitled to a neutral and detached magistrate. A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Jackson*, 292 Mich App at 597-598 (quotation marks and citation omitted). In examining whether a trial court's

-8-

statements or conduct in the presence of the jury deprived a defendant of the right to a fair trial, this Court determines whether the contested statements or conduct "pierces the veil of judicial impartiality," which transpires "when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 170-171. The reviewing court should inquire into a number of factors, including, but not limited to:

> the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id*. at 164.]

Furthermore, the examining court should not "evaluate errors standing alone, but rather consider the cumulative effect of the errors." *Id*. at 171-172.

In the present matter, Allen-Bass challenges the trial court's repetition of complainant's statements during her trial testimony. Allen-Bass contends that the court's questioning and reiteration of complainant's unfavorable assertions regarding the alleged sexual abuse unfairly increased complainant's perceived truthfulness in what was essentially a credibility contest. The trial court "is generally permitted to ask questions of witnesses." *People v Swilley*, 504 Mich 350, 372; 934 NW2d 771 (2019); MRE 614(b). However, "the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173. "It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally." *Id*. at 174. The trial court may "not permit his own views on disputed issues of fact to become apparent to the jury." *Id*. (quotation marks and citation omitted).

The record indicates that the trial court initiated the questioning of complainant, and proceeded with the repetition of certain statements, because of complainant's flustered nature during her testimony, as she was nine years old, in addition to the parties' counsel voicing complaints that they were unable to hear complainant. The following interaction transpired during complainant's trial testimony:

> *Mr. Killewald* [defense counsel]: Your Honor, could you please tell us what [complainant] said? I'm sorry, I didn't hear.
>
> *The Court:* I will.
>
> * * *
>
> *The Court*: Okay. [Complainant] [d]o you mind if I tell them what you just told me? I'm okay.
>
> So, she said that her mom took her into the room and that she laid down on the bed and Richie Rich put his mouth on her privates to show [complainant]. And she was watching, and [complainant] was watching. So that's what she just said.

A second illustration of the nature of the trial court's involvement during complainant's testimony is as follows:

> *The Court*: Tell me if I'm getting this right. You just felt breathing, is that what you said? Where did you feel it?
>
> *Complainant*: On my privates.
>
> *The Court*: On your privates. Okay. What happened next?
>
> *Complainant*: That's it.
>
> *The Court*: That was it.
>
> *Ms. Reiser* [prosecution]: I'm not sure I heard you correctly, [complainant]. Did you tell the Judge that you felt breathing on your privates?
>
> *Mr. Goldstein* [codefense counsel]: Yes.
>
> *The Court*: Yes.

The trial court additionally provided complainant with its gavel to hold onto to ease complainant's nerves, as she expressed that there was "[s]o much people," presumably referring to the jury. The prosecution further instructed complainant to look to the trial court when testifying if she became apprehensive. The court questioned complainant about whether her pajama pants remained on during the alleged sexual abuse, whether the sequence of events leading to the underlying incidents was accurate, and whether the perpetrator was dubbed "Richie Rich." The trial court further inquired regarding Allen-Bass's explicit acts once complainant sensed Allen-Bass near her genital area, asking, "So, tell me if I get this right. On your privates, correct, is that right?" and "So, could you feel his teeth on your privates?" Lastly, the trial court clarified which parties were present in McDaniel's residence during the underlying incident, providing, "Okay. Was anybody else besides you and [your brother] and your mom home? I think you said earlier your siblings. So, were there other siblings there or was it just [your brother]?" Defense counsel did not object to any of the trial court's questions or reiterations of complainant's statements.

On this record, we opine that the trial court's tone and demeanor in the presence of the jury throughout the proceedings was not improper. The court did not steer complainant's testimony into matters not previously discussed, and did not interrogate complainant in a way that revealed the court's opinion regarding the credibility of complainant's contentions. Rather, the court's restatement of complainant's testimony, in addition to its questioning of complainant, were advanced solely to clarify complainant's narrative. See *Stevens*, 498 Mich at 173 (noting, "it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information"). The trial court queried complainant regarding her previous testimony, particularly whether she remained clothed during the alleged sexual abuse, where Allen-Bass placed his mouth on complainant's body, and the extent of McDaniel's involvement throughout the underlying incident. As the nature of the sexual acts was a fundamental element of the CSC-I charge against Allen-Bass, and because complainant's testimony was unclear at times, the trial court was permitted to clarify with complainant precisely what transpired during

the purported assault. The trial court also withheld its questioning and reiteration of complainant's testimony until the parties' counsel voiced they were unable to hear complainant, and complainant shared her discomfort testifying before the jury. See *Swilley*, 504 Mich at 381 (opining, "Judicial questioning might be more necessary when confronted with a difficult witness who refuses to answer questions or provides unclear answers.").

While the trial court interacted with complainant more extensively than any other witness, complainant's testimony was the longest of all the witnesses at trial, and complainant was the only minor child presented as a witness. Furthermore, the court did not embellish complainant's answers or comment on the substance of her testimony; rather, it continually attempted to ensure all parties present were able to fully comprehend complainant's testimony. While Allen-Bass contends that his previous tension with the court impacted its conduct throughout the trial proceedings, as the trial court considered holding Allen-Bass in contempt because of his inappropriate comments at a pretrial hearing, the aforementioned matter had no bearing on the trial court's conduct during complainant's testimony. As the trial court noted, the jury was not privy to Allen-Bass's improper statements, or any alleged bias the trial court purportedly possessed towards Allen-Bass, and "twelve jurors decided your guilt not me."

The court additionally instructed the jury twice that its comments and questions were not evidence to be considered or reflective of the court's opinion concerning the subject matter. The trial court provided the following in its closing instructions:

> My comments, rulings, and instructions are also not evidence. It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case.
>
> However, when I make a comment or give an instruction I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide the case you must pay no attention to that opinion. You are the only judges of the facts and you should decide this case from the evidence.

This Court presumes that the jury followed its instructions, and jury instructions are reputed to cure most errors. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). The evidentiary record does not suggest that the trial court's conduct was so improper that its instructions to the jury were inadequate. See *Stevens*, 498 Mich at 177-178 (stating, "Depending on the circumstances, an immediate curative instruction may further alleviate any appearance of advocacy or partiality by the judge. That said, in some instances judicial conduct may so overstep its bounds that no instruction can erase the appearance of partiality").

Ultimately, the totality of the circumstances does not establish a reasonable likelihood that the trial court's conduct during trial improperly swayed the jury by producing the appearance of partiality or advocacy against Allen-Bass. See *Jackson*, 292 Mich App at 599-600 (opining, "Considering the limited context in which the court's statements were made, they were not sufficient to pierce the veil of judicial impartiality and deprive defendant of a fair trial"). Moreover, even if Allen-Bass established an error, he could not demonstrate plain error affecting his substantial rights, considering the proofs presented. Thus, Allen-Bass is not entitled to relief.

Affirmed.

/s/ Michael J. Riordan
/s/ Adrienne N. Young
/s/ Randy J. Wallace